[L. A. No. 12635. In Bank.—April 30, 1931.]

ANNE MEYERS, Respondent, v. HAAKON BERG et al., Executors, etc., Appellants.

Rex B. Goodcell, Harold N. Nuzum and Manley C. Davidson for Appellants.

Kemper Campbell and Charles L. Nichols for Respondent.

WASTE, C. J.—In this action for slander brought by plaintiff against her father-in-law, the jury brought in a verdict in the sum of $25,000, which, upon the denial of a motion for new trial, was reduced by the court below to $15,000, and judgment entered accordingly. The defendant Stephen M. Meyers appealed. Upon his subsequent death, the executors of his estate were substituted in his place and stead.

Examination of the record discloses that in the latter part of the year 1915 the plaintiff, then a girl of approximately twenty years of age, worked as a domestic in defendant's household. Defendant's family consisted of his wife, daughter and son, the latter being about seventeen years of age. While thus in the defendant's employ, plaintiff studied at night and various other times to fit herself for a position in the business world. In April of 1916 she left the defendant's employ, and secured such a position. Shortly thereafter, and, as she claims, upon the solicitation of the boy, plaintiff married the defendant's son. There is no suggestion or intimation of prior improprieties between the young people, nor does the defendant raise or attempt to raise any question as to plaintiff's character or reputation. After reading the entire record, however, one cannot help concluding that this marriage did not meet with parental approval, the defendant acquiring an immediate and active dislike for his daughter-in-law. As evidence thereof, and as also tending to establish the malice with which the slanderous words hereinafter referred to were uttered, the plaintiff adduced evidence showing that shortly after her marriage with his son the defendant prevailed upon the boy to leave Milwaukee, where he was then living with his wife, for Chicago, where he might work and live with his family.

Some weeks later, plaintiff followed her husband to Chicago, where she remained for a period of about six months, during no part of which time was she ever invited to the defendant's home. Learning that plaintiff was to give birth to a second child in the year 1918, the defendant upbraided her and offered her $10,000 to give up the first child, adding: "I never want to lay eyes on you again." Plaintiff was then only twenty-two years of age. In November, 1922, defendant made disparaging remarks to the plaintiff as to why her husband had temporarily left her for another woman. Plaintiff testified that on numerous occasions, and in the presence of various members of his family, the defendant had called her a "dirty bitch"—on one occasion charging her with attempting to break up his daughter's home. There is also testimony in the record showing that in the fall of 1924 defendant referred to the plaintiff as a "kitchen mechanic"; that in 1927 he referred to her as "a dirty, rotten snake", to whom he would not give a "bite to eat"; and that in March of 1928 he expressed his hatred for plaintiff. These latter statements were made to persons other than members of the family, and were relied on by the plaintiff as showing a continuous course of ill-feeling toward her which the jury might well consider in determining the malice with which defendant was actuated in giving expression to the slanderous words for which this suit was brought.

With this picture before us, there is no mistaking defendant's state of mind when, on June 23, 1927, he declared to the witness George L. Rollins that plaintiff was "a dirty bitch", which words constitute the foundation of this action. The witness stated that when defendant so referred to the plaintiff he understood him to be "reflecting upon her chastity". This conclusion of the witness finds some support in his further testimony to the effect that on this same occasion the defendant offered him ten dollars to spy on the plaintiff and his (defendant's) son-in-law to determine whether there was "anything going on" between them. On cross-examination, the witness stated that the defendant had "many times" referred to the plaintiff as a "bitch", and that to him the word was the equivalent of "prostitute". There is evidence that the witness had repeated the slander-

ous words only to the plaintiff, her counsel, and an investigator employed in her behalf.

Taking the stand in his own behalf, the defendant denied having made any of the disparaging remarks attributed to him. He called no other witnesses. It was stipulated that defendant was worth ''not to exceed $75,000''.

Among other things, the court charged the jury that the word ''bitch'', in and of itself, did not impute unchastity when applied to a female, but that under certain circumstances it might have such effect, and if they should find that defendant had so referred to the plaintiff and intended thereby, under all the circumstances, to imply that she was an unchaste woman, and such statement was so understood by the person to whom it was spoken, a verdict should be found for the plaintiff. The jury was further instructed that the burden was on plaintiff to prove the words had been spoken maliciously and with the malevolent motive, purpose and design of disgracing, degrading and defaming the plaintiff—malice being defined for the jury as a state of mind arising from hatred or ill-will, evidencing a willingness to vex, annoy, or injure another person. To guide the jury in awarding damages, should they find it necessary so to do, the court charged that they might consider the good name and reputation of the plaintiff, her injured feelings, her mental suffering, which might be increased by reason of the fact that the disgrace, if any, is visited upon one's children, and the defendant's wealth and social position at the time of the utterance as bearing on the influence of his words and the extent of the injury resulting therefrom.

Defendant does not assail any portion of the court's charge, which fully and fairly informed the jury on all the issues in the case. The record is free of anything approximating prejudicial error. A reading of the entire transcript satisfies us that the verdict is neither against law nor unsupported by the evidence, as urged by the appellant.

Any question as to the excessiveness of the award of damages is addressed primarily to the discretion of the trial court. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 366 [12 A. L. R. 1007, 184 Pac. 672].) We cannot say that such award, as reduced by the court below, is grossly excessive.

It is difficult to determine the proper amount of damages in an action of this character, and for this reason the

law has wisely left it to the just discretion of the jury, and has given to them the right, upon proof that the defendant was guilty of malice, to give damages for the sake of example and by way of punishing the defendant. (Civ. Code, sec. 3294.) Under the evidence before it, the jury must have found that the defendant was guilty of malice in the utterance of the words charged, and while the reduced sum awarded as damages is large, we cannot say that it is so great as to shock the moral sense.

The judgment is affirmed.

Preston, J., Richards, J., Shenk, J., Curtis, J., Seawell, J., and Langdon, J. concurred.

Rehearing denied.